01

02

03

04

05           UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
06                  AT SEATTLE

07  WILLIAM EMILIO VALENCIA,          )
                                      )   CASE NO. C14-0174-JCC-MAT
08          Plaintiff,                )
                                      )
09          v.                        )   REPORT AND RECOMMENDATION
                                      )   RE: SOCIAL SECURITY DISABILITY
10  CAROLYN W. COLVIN, Acting         )   APPEAL
    Commissioner of Social Security,  )
11                                    )
            Defendant.                )
12  _____ )

13          Plaintiff William Emilio Valencia proceeds through counsel in his appeal of a final

14  decision of the Commissioner of the Social Security Administration (Commissioner).   The

15  Commissioner denied plaintiff's application for Disability Insurance Benefits (DIB) after a

16  hearing before an Administrative Law Judge (ALJ).   Having considered the ALJ's decision,

17  the administrative record (AR), and all memoranda, the Court recommends this matter be

18  AFFIRMED.

19                    **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1979.[1]   He completed high school and previously

21

22          1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
    Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

REPORT AND RECOMMENDATION
PAGE -1

01  worked as a sales clerk, shipping and receiving clerk, industrial truck operator, and construction

02  worker.   (AR 30-31, 40.)

03      Plaintiff filed his DIB application in October 2012, alleging disability beginning

04  November 1, 2008.  (AR 164-65.)  Plaintiff remained insured for DIB through December 3,

05  2010 and, therefore, was required to establish disability on or prior to that "date last insured"

06  (DLI).  *See* 20 C.F.R. §§ 404.131, 404.321.  His application was denied initially and on

07  reconsideration, and he timely requested a hearing.

08      On February 14, 2012, ALJ M.J. Adams held a hearing, taking testimony from plaintiff

09  and a vocational expert (VE).  (AR 35-81.)  On March 22, 2012, the ALJ issued a decision

10  finding plaintiff not disabled.   (AR 22-31.)

11      Plaintiff timely appealed.   The Appeals Council denied review on December 11, 2013

12  (AR 1-4), making the ALJ's decision the final decision of the Commissioner.   Plaintiff

13  appealed this final decision of the Commissioner to this Court.

14                                   **JURISDICTION**

15      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

16                                   **DISCUSSION**

17      The Commissioner follows a five-step sequential evaluation process for determining

18  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

19  must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

20  not engaged in substantial gainful activity since the November 1, 2008 onset date through the

21  DLI.   At step two, it must be determined whether a claimant suffers from a severe impairment.

22

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
PAGE -2

01   The ALJ found plaintiff's obesity and a seizure disorder severe. Step three asks whether a

02   claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's

03   impairments did not meet or equal the criteria of a listed impairment.

04        If a claimant's impairments do not meet or equal a listing, the Commissioner must

05   assess residual functional capacity (RFC) and determine at step four whether the claimant has

06   demonstrated an inability to perform past relevant work. The ALJ found plaintiff had the RFC

07   to lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk

08   at least six hours in an eight-hour workday, and sit for at least six hours in an eight-hour

09   workday. He further found plaintiff can never climb ladders, ropes, or scaffolding, and should

10   avoid even moderate exposure to heights or hazardous machinery. With that RFC, and with

11   the assistance of the VE, the ALJ concluded that, through the DLI, plaintiff was capable of

12   performing past relevant work as a sales clerk or as a shipping and receiving clerk.

13        If a claimant demonstrates an inability to perform past relevant work or has no past

14   relevant work, the burden shifts to the Commissioner to demonstrate at step five that the

15   claimant retains the capacity to make an adjustment to work that exists in significant levels in

16   the national economy. Finding plaintiff not disabled at step four, the ALJ did not proceed to

17   step five. The ALJ concluded plaintiff was not disabled at any time from the onset date

18   through the date of the decision.

19        This Court's review of the final decision is limited to whether the decision is in

20   accordance with the law and the findings supported by substantial evidence in the record as a

21   whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means

22   more than a scintilla, but less than a preponderance; it means such relevant evidence as a

01  reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

02  F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

03  supports the final decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

04  F.3d 947, 954 (9th Cir. 2002).

05      Plaintiff argues the ALJ erred in failing to include any limitations related to his severe

06  seizure disorder in the RFC or in the hypothetical proffered to the VE, resulting in error in the

07  decision at step four.   He requests remand for further administrative proceedings.   The

08  Commissioner maintains the ALJ's decision has the support of substantial evidence and should

09  be affirmed.   For the reasons discussed below, the undersigned agrees with the Commissioner.

10                  <u>Limitations Associated with Seizure Disorder</u>

11      Plaintiff avers error in the ALJ's failure to include any functional limitations or sequelae

12  resulting from his severe seizure disorder in the RFC.   He notes the VE's testimony that an

13  individual would not be able to sustain competitive employment with additional RFC

14  restrictions of "episodes periodically or sporadically, unpredictable through the work day, that

15  would cause [him] to have down time as much as [15 to] 20 percent of the work day[,]" or

16  missing at least two days of work each month.  (AR 77-79.)   Plaintiff argues the ALJ

17  improperly ignored the VE's testimony, and that an ALJ "must include some recognition of the

18  functional limitations presented by the severe seizure disorder," and that the "inclusion of two

19  minor environmental limitations is insufficient."   (Dkt. 17 at 6.)   The Court, however, finds

20  no error established.

21      The mere fact a medical condition is deemed severe at step two does not necessitate the

22  identification of corresponding limitations at step four.  *See Bray v. Comm'r of SSA*, 554 F.3d

REPORT AND RECOMMENDATION
PAGE -4

01 1219, 1228-29 (9th Cir. 2009) ("Bray offers no authority to support the proposition that a severe

02 mental impairment must correspond to limitations on a claimant's ability to perform basic work

03 activities.")   Moreover, the ALJ did include RFC limitations associated with plaintiff's seizure

04 disorder – including a prohibition on climbing ladders, ropes, or scaffolding, and a limitation to

05 avoiding even moderate exposure to heights or hazardous machinery.  *See id.* (finding ALJ

06 nonetheless adequately accounted for adjustment disorder in finding plaintiff could perform all

07 but the most detailed and complex tasks).

08         Nor does plaintiff otherwise demonstrate error in the RFC assessed, the corresponding

09 hypothetical proffered to the VE at hearing, or the conclusion at step four.   Plaintiff points

10 generally to the medical record, his testimony, and the testimony of a lay witness as supporting

11 greater limitations in his functioning.   He fails, however, to either identify or demonstrate any

12 error in the ALJ's assessment of any of the medical evidence or testimony.

13 A.    Credibility

14         The rejection of a claimant's credibility requires the provision of clear and convincing

15 reasons.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).   "General findings are

16 insufficient; rather, the ALJ must identify what testimony is not credible and what evidence

17 undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

18 "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

19 inconsistencies either in his testimony or between his testimony and his conduct, his daily

20 activities, his work record, and testimony from physicians and third parties concerning the

21 nature, severity, and effect of the symptoms of which he complains."  *Light v. Social Sec.*

22 *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

REPORT AND RECOMMENDATION
PAGE -5

01     The ALJ found plaintiff to have "limited credibility" and, therefore, credited plaintiff's

02  testimony as to the degree of his symptoms and limitations only to the extent reflected in the

03  RFC.   The ALJ provided several clear and convincing reasons to support this determination.

04          1.     <u>Unemployment benefits and work history:</u>

05     The ALJ considered plaintiff's work history, his use of unemployment benefits through

06  the second quarter of 2010, and his continued pursuit of work during that time period as

07  inconsistent with his application for disability benefits and detracting from his credibility as to

08  the severity of his symptoms.   (AR 26-27 (noting, *inter alia*, plaintiff's testimony he was laid

09  off from his long-term employer due to downsizing and economic difficulties, that he applied

10  for customer service jobs and apartment management work while unemployed, and that his

11  application for unemployment benefits required he attest he was ready, able, and willing to

12  immediately accept any suitable employment offered to him).)   The ALJ concluded:

> . . . I recognize the policy of not basing a decision of disability solely on
> receiving [unemployment benefits].   However, when the following facts are
> examined, the claimant appears to have little incentive to work.   Social Security
> records show that the claimant earned $22,646 in unemployment benefits in
> 2010.   A comparison of this amount against the claimant's earnings record
> shows a single year (2007) when the claimant earned more.   The reality is that
> the claimant has earned more while unemployed than during his other
> productive years of gainful activity, a circumstance that cannot be ignored.   His
> lengthy receipt of unemployment benefits, until January 2010 (when these
> benefits expired), while he reportedly spent his free time playing video games,
> watching television, and visiting with friends, severely detracts from his
> credibility, especially when the claimant has [been] able to work in the past
> despite his seizure impairment, and without the benefit of medication.

20  (AR 29.)   Plaintiff sets forth no error in the consideration of this evidence or the ALJ's

21  reasoning.   *See Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) ("receipt

22  of unemployment benefits can undermine a claimant's alleged inability to work full-time");

REPORT AND RECOMMENDATION
PAGE -6

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (claimant's work history properly considered).  (*See also* AR 58 (plaintiff testified he applied for both full and part time jobs).)

2.    <u>Minimal treatment</u>:

The ALJ next found the medical record did not support plaintiff's testimony as to the severity or frequency of his seizures, and indicated he could return to gainful activity.   The ALJ's discussion reasonably included consideration of the minimal medical treatment plaintiff received, describing an initial visit to a neurologist in July 2004, followed by two medical visits in November 2009, a return to a neurologist in December 2010, and a resumption of medical treatment in February 2011.  (AR 28.)  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ appropriately considers an unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment; ALJ permissibly inferred claimant's pain was not as disabling as alleged "in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects.")  (*See also* AR 242-315 (comprising entirety of medical record in this case).)

3.    <u>Noncompliance with treatment</u>:

The ALJ likewise reasonably considered plaintiff's noncompliance with repeated recommendations to cease or decrease his alcohol consumption, and his failure to take prescribed medication.  (AR 27-28.)  *See Tommasetti*, 553 F.3d at 1039.  The ALJ considered plaintiff's report that he was financially limited in his ability to pursue treatment and medication, but reasonably found the excuse unpersuasive, noting plaintiff earned $22,646.00 in unemployment benefits in 2010, and that he was able to financially sustain an alcohol and

01  tobacco habit during that time period.   *See Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir.

02  2012) ("[A] claimant's failure to assert a good reason for not seeking treatment, 'or a finding by

03  the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the

04  claimant's pain testimony.'") (quoted source omitted).

05          4.      Contradictory medical evidence:

06          The ALJ also pointed to the medical evidence as including, for example, EEG's

07  showing generalized spike-and-wave activity consistent with epilepsy, but normal EKGs,

08  unremarkable neurological examinations, and consistent observations of clear speech, alert and

09  oriented behavior, and intact attention and memory.   (AR 27-28.) The ALJ, as such, properly

10  considered contradiction of plaintiff's testimony by the medical record.   *Carmickle*, 533 F.3d

11  at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's

12  subjective testimony.").

13          5.      Inconsistency:

14          The ALJ additionally considered inconsistency between plaintiff's testimony and his

15  reporting to medical providers as to the frequency and severity of his seizures.   (AR 27-29.)

16  The ALJ described the evidence and concluded:

17          Further detracting from his credibility is that his most severe periods of his
        seizure activity, as reported to medical treatment providers, were not as severe
18          as testified by the claimant [at] his hearing.   At the hearing, he testified that he
        has three to ten seizures per day, and that he requires between fifteen to sixty
19          minutes to fully recover from each seizure.   In December 2010, he stated that
        he was having two to three seizures per day, each lasting about three seconds,
20          and that he had cloudy thinking for thirty to sixty minutes following a seizure.
        He denied any fatigue.   At different points in 2011, following his use of
21          anticonvulsants, the claimant [stated] that he was having between one to five
        seizures per week, and sometimes had weeks where none occurred.   In October
22          2011, he stated that his seizures were happening three to five times per day,

REPORT AND RECOMMENDATION
PAGE -8

01    lasting up to two minutes.   In November 2011, to a neurologist, he again stated
02    that he had up to five seizures per day, with minimal motor activity, and with a few minutes of sluggish behavior subsequently.   These reports differ significantly from his testimony.

04 (AR 28-29, internal citations to record omitted.)   The ALJ, as such, reasonably considered

05 inconsistency between plaintiff's testimony and the record.   *See Tonapetyan v. Halter*, 242

06 F.3d 1144, 1148 (9th Cir. 2001) (ALJ appropriately considers inconsistency with the evidence

07 and a tendency to exaggerate in rejecting a claimant's testimony), and *Greger v. Barnhart*, 464

08 F.3d 968, 972 (9th Cir. 2006) (ALJ may consider a claimant's inconsistent or non-existent

09 reporting of symptoms).   *See also* Social Security Ruling (SSR) 96-7p ("One strong indication

10 of the credibility of an individual's statements is their consistency, both internally and with

11 other information in the case record.")

12      6.    Activities:

13      Finally, the ALJ found plaintiff had described activities not limited to the extent one

14 would expect given his complaints of disabling symptoms and limitations.   (AR 29.)   The

15 ALJ noted plaintiff's reports of frequent, near daily running in April and May 2011, with

16 seizures tending to occur on days when he did not exercise, and, in June 2011, his report of

17 "being 'very busy with traveling [and] family weddings.'"   (*Id.*, citation to record omitted.)

18 Function reports completed in October 2010 and March 2011 included reports of daily cleaning

19 and meal preparation, playing with his children, occasional hunting and fishing, and daily video

20 game playing.   At hearing, plaintiff described an active social life and "playing video games

21 for extended periods."   (*Id.*)   The ALJ reasonably found these activities to suggest minimal

22 limitations due to plaintiff's seizures and an indication he could return to gainful work, as well

REPORT AND RECOMMENDATION
PAGE -9

01   as inconsistency with plaintiff's testimony of disabling symptoms and limitations.  *See*

02   *Molina*, 674 F.3d at 1112-13 ("Even where . . . activities suggest some difficulty functioning,

03   they may be grounds for discrediting the claimant's testimony to the extent that they contradict

04   claims of a totally debilitating impairment.") (citations omitted), and *Orn v. Astrue*, 495 F.3d

05   625, 639 (9th Cir. 2007) (describing "two grounds for using daily activities to form the basis of

06   an adverse credibility determination[,]" including (1) whether the activities contradict the

07   claimant's testimony and (2) whether the activities "meet the threshold for transferable work

08   skills").

09        Plaintiff, in sum, unsuccessfully relies on his testimony as demonstrating error in the

10   RFC, VE hypothetical, and step four conclusion.

11   B.    Lay Testimony

12        Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

13   to work is competent evidence and cannot be disregarded without comment.  *Van Nguyen v.*

14   *Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  *But see Molina*, 674 F.3d at 1115-22 (describing

15   how the failure to address lay testimony may be harmless).   The ALJ can reject the testimony

16   of lay witnesses only upon giving germane reasons.  *Smolen*, 80 F.3d at 1288-89 (finding

17   rejection of testimony of family members because, *inter alia*, they were "'understandably

18   advocates, and biased'" amounted to "wholesale dismissal of the testimony of all the witnesses

19   as a group and therefore [did] not qualify as a reason germane to each individual who

20   testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

21        In this case, the ALJ gave minimal weight to the testimony of plaintiff's significant

22   other, Reann Ruiz, "for essentially the same reason I give minimal weight to the claimant's

REPORT AND RECOMMENDATION
PAGE -10

01  testimony." (AR 30.) He found plaintiff's statements to medical providers to indicate that his

02  seizures, even at their most severe, are not as limited as Ms. Ruiz testified, describing various

03  reports and finding they "differ significantly from Ms. Ruiz's testimony that the claimant's

04  seizures are so frequent that he never fully recovers." (*Id*.) The ALJ also found medical

05  findings and observations inconsistent with the testimony from both plaintiff and Ms. Ruiz that

06  he has difficulty communicating as a result of his seizures. Finally, the ALJ pointed to

07  plaintiff's reported activities to indicate his seizures have a minimal impact on his daily

08  functioning. The ALJ, as such, properly provided germane reasons for according little weight

09  to the lay testimony. *See*, *e.g.*, *Carmickle*, 533 F.3d at 1164 (inconsistency between lay

10  statement and evidence of activities germane), and *Bayliss v. Barnhart*, 427 F.3d 1211, 1218

11  (9th Cir. 2005) (inconsistency between lay statement and medical evidence germane). *See*

12  *also Molina*, 674 F.3d at 1114 (where an ALJ provides germane reasons for rejecting the

13  testimony of one witness, the ALJ need only point to those reasons upon rejecting similar

14  testimony offered by a different witness) (citing *Valentine v. Comm'r SSA*, 574 F.3d 685, 694

15  (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the

16  claimant's] own subjective complaints, and because [the lay witness's] testimony was similar

17  to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay

18  witness's] testimony")).

19  C.    Medical Opinion Evidence

20       Plaintiff points to medical findings by treating physician Dr. Dinah Thyerlei, and other

21  medical evidence associated with his seizure disorder. (*See* Dkt. 17 at 3.) Yet, plaintiff fails

22  to identify any specific error in the ALJ's consideration of that or other medical evidence. The

REPORT AND RECOMMENDATION
PAGE -11

01  ALJ, in fact, gave significant weight to Dr. Thyerlei's opinion that plaintiff should avoid

02  swimming, unprotected heights, and driving due to his seizures, finding the opinion consistent

03  with both the medical record and with the opinions of state agency medical consultant Dr.

04  Guillermo Rubio.   (AR 30 (citing AR 307).)   The ALJ adopted the opinions of Dr. Rubio – the

05  only other medical opinion of record – and incorporated those opinions into the RFC.   (*Id.*

06  (citing AR 92-101).)   Plaintiff, as such, demonstrates no error in relation to any medical

07  evidence of record.   *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir 2010)

08  (ALJ need not provide reason for rejecting physician's opinions where ALJ incorporated

09  opinions into RFC; ALJ incorporated opinions by assessing RFC limitations "entirely

10  consistent" with limitations assessed by physician).   For this reason, and for the reasons stated

11  above, plaintiff fails to demonstrate any error in the RFC assessment, the corresponding

12  hypothetical proffered to the VE, or the conclusion at step four.

13                                    CONCLUSION

14       This matter should be AFFIRMED.

15       DATED this 8th day of August, 2014.

16

17       _____
                       Mary Alice Theiler
18                     Chief United States Magistrate Judge

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -12